### WILLIAM A. FORCE & CO. v. INDEPENDENT MFG. CO. et al.

#### (Circuit Court, E. D. New York. May 22, 1903.)

1. PATENTS—INFRINGEMENT—NUMBERING MACHINE.
    The Sawyer patent, No. 462,065, for a numbering machine, claim 1, construed, and as limited by the prior art *held* not infringed.

In Equity. Suit for infringement of letters patent No. 462,065, for a numbering machine, granted to Willard W. Sawyer, October 27, 1891. On final hearing.

William E. Warland (Henry Schreiter, of counsel), for complainant.
H. Albertus West, for defendants.

THOMAS, District Judge. The bill is to enjoin the defendants from infringing certain letters patent, to wit, No. 462,065, issued October 27, 1891, to Sawyer, which patent was adjudicated in the recent case of William A. Force, predecessor of the present complainant, against the defendants, the Sawyer-Boss Manufacturing Company, Robert A. Stewart, George T. Holihan, Willard W. Sawyer, and Thomas H. Boss (C. C.) 111 Fed. 902, affirmed 113 Fed. 1018, 51 C. C. A. 592. The Sawyer-Boss Manufacturing Company was composed of the four individual defendants in the former suit who were privy to the sale of the patent to the complainant in such suit. After the decree therein the Sawyer-Boss Manufacturing Company sold its entire plant, factory, tools, machinery, patents, patterns, and whatever related to the manufacture of the infringing machines at No. 34 South Sixth street, Brooklyn, N. Y., to the Independent Manufacturing Company, one of the defendants in the present suit, and such defendant thereafter manufactured machines, alleged to be infringements of the patent in suit, at such place in Brooklyn, until it removed to Chicago, on May 17, 1902. Robert A. Stewart, defendant in this and the former suit, is the president of the Independent Manufacturing Company, Holihan is a stockholder thereof, while Boss is the superintendent of such company, and it appears that such three persons are the controlling owners of such company.

The inference is justifiable that the defendants enjoined by the former decree, under the form of a corporation, are manufacturing the present alleged infringing machines. Nevertheless, the chief contention involves the question of infringement, for the machine manufactured by the Independent Manufacturing Company, it is claimed, may be differentiated from the former infringing machines. The complainant charges the infringement of claim 1, which is as follows:

"(1) In a stamp, the combination of a main frame, a series of similarly spaced numbering wheels, corresponding ratchet wheels, detents for these numbering wheels and ratchet wheels operating radially within a support, pawls for imparting motion to said ratchet wheels, a movable yoke sustaining the numbering and ratchet wheels, and a frame-like lever carrying the pawls and pivotally connected to said yoke and also to the main frame, and an inking lever fulcrumed to the main frame and pivotally connected between its ends with the said lever which moves the pawls, substantially as specified."

All the parts of this combination are old except the frame-like lever pivotally connected with the yoke and main frame, and an inking lever fulcrumed to the main frame and pivotally connected between its ends with the lever which moves the pawls. In other words, the inventor devised the frame-like lever, which moves the pawls and also the inking pad by the same downward motion of the rod or plunger. When the rod descends, the lever throws the inking pad out, and moves the pawls which actuate the ratchet wheels, and this becomes possible because the frame-like lever is pivotally connected to the yoke and also to the main frame, and the inking lever fulcrumed to the main frame is pivotally connected between its ends with the lever which moves the pawls. This practically conjoint movement of the pawls and inking lever results from such pivotal connections. The vital point of the invention is the pivotal connection; the vital result is this movement of the pawls and inking lever.

The complainant contends that if the pivotal connections exist, as demanded by the claim, it is unimportant whether this double result is obtained, or whether the result is limited only to the movement of the pawls, and in support of this contention quotes the following language of the specification:

"The forward or lower end of the lever, H (frame-like lever), is utilized to form an inking appliance, and for this purpose has a pad of absorbent material saturated with ink applied to that surface, which is moved beneath the· numbering wheels."

The complainant urges this contention for the reason that the defendants' alleged infringing device consists of a frame-like lever pivotally connected to the yoke and to the main frame so as to move the pawls, but not directly connected with the link which moves the inking pad. The link which moves the inking pad is attached to the yoke at one end, and at the other end to the inking lever. It does not seem necessary to determine whether the two resultant motions are required, or whether one only satisfies the claim. In any case there must be an inking lever pivotally connected in the manner described in the claim. If the link extending to the inking lever, used in the infringing machine, were connected with the frame-like lever, used in that machine to move the pawls, it would fall within the literal reading of the claim. The end of such link pivotally connected to the inking lever accords with the claim. The other end is fastened to the yoke, and not directly to the frame-like lever, and the vital question is whether that is such a variance as to avoid infringement.

There is no question whatever but that the link thus used to move the inking pad was old, being concededly shown in the letters patent No. 398,624, issued February 26, 1889, to Koch, upon an application

filed November 10, 1887. But such a link is nowhere shown in connection with the frame-like lever used for the purpose of moving the pawls, and pivoted as described in the claim. Nevertheless, the claim demands that the lever shall not only be fulcrumed to the main frame, but that it shall be pivotally connected with the lever which moves the pawls. The complainant urges that the claim does not demand that it shall be immediately pivotally connected, but that it is so pivotally connected, although the yoke be used as an intermediary. It does not seem that such was the purpose of the inventor. It is considered that he intended to provide for a frame-like lever, which should carry the pawls, through a pivotal connection with the yoke and the main frame, and the inking lever through a pivotal connection therewith, that is, by the frame-like lever pivoted to the inking lever.

The entire discussion seems to turn upon the point whether there is a pivotal connection between the inking lever and the frame-like lever, through the intermediary of the yoke. Taking into view the prior art, it is believed that the patent does not cover such a device and was not intended to.

This conclusion must result in a dismissal of the bill.